IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AMOS DYLAN WOODSIDE, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 18-10 |
| NANCY A. BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY, | ) |
| Defendant. | ) |

O R D E R

AND NOW, this 30th day of August, 2019, upon consideration of the parties' cross motions for summary judgment, the Court, upon review of the Acting Commissioner of Social Security's final decision, denying Plaintiff's claim for disability insurance benefits under Subchapter II of the Social Security Act, 42 U.S.C. § 401 et seq., and denying Plaintiff's claim for supplemental security income benefits under Subchapter XVI of the Social Security Act, 42 U.S.C. § 1381 et seq., finds that the Acting Commissioner's findings are supported by substantial evidence and, accordingly, affirms. See 42 U.S.C. § 405(g); Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs., 48 F.3d 114, 117 (3d Cir. 1995); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied sub nom., 507 U.S. 924 (1993); Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); see also Berry v. Sullivan, 738 F. Supp. 942, 944 (W.D. Pa. 1990) (if supported by substantial evidence, the Commissioner's decision must be affirmed, as a federal

court may neither reweigh the evidence, nor reverse, merely because it would have decided the claim differently) (citing Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981)).[1]

---

[1] Plaintiff argues, in essence, that the Administrative Law Judge ("ALJ") erred by: (1) failing to find that Plaintiff's impairments meet the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings") at Step Three of the sequential analysis; (2) failing to order consultative evaluations, thereby failing to develop the record; (3) improperly disregarding the medical opinion of Plaintiff's treating health care provider; (4) improperly evaluating Plaintiff's subjective complaints of pain, thereby erring in making his residual functional capacity ("RFC") assessment; and (5) improperly disregarding the testimony of the vocational expert ("VE") and relying on an incomplete hypothetical question. The Court disagrees and finds that substantial evidence supports the ALJ's findings as well as his ultimate determination, based on all the evidence presented, of Plaintiff's non-disability.

First, Plaintiff contends that the ALJ erred in finding that Plaintiff's impairments do not meet the severity of Listing 12.05(C) at Step Three of the sequential analysis. The Court notes that the Listings operate as a regulatory device used to streamline the decision-making process by identifying claimants whose impairments are so severe that they may be presumed to be disabled. See 20 C.F.R. §§ 404.1525(a), 416.925(a). Because the Listings define impairments that would prevent a claimant from performing any gainful activity—not just substantial gainful activity—the medical criteria contained in the Listings are set at a higher level than the statutory standard for disability. See Sullivan v. Zebley, 493 U.S. 521, 532 (1990). Thus, a claimant has the burden of proving a presumptively disabling impairment by presenting medical evidence that meets all of the criteria of a listed impairment or is equal in severity to all of the criteria for the most similar listed impairment. See 20 C.F.R. §§ 404.1526, 416.926.

In this case, the ALJ explained in his decision that Plaintiff's impairments had been evaluated under Listing 12.05, which deals with intellectual disability. (R. 21). The ALJ noted that paragraph C of that listing requires a "valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function; i.e., there must be another severe impairment or combination of severe impairments." (R. 22 (emphasis in original)). Upon review of the evidence of record, however, the ALJ found that although Plaintiff's "I.Q. scores . . . fall within the parameters of paragraph C, there is no other severe impairment(s) of record." (R. 22). Therefore, the ALJ found that the requirements of paragraph C had not been met. (R. 22). Plaintiff asserts that his seizure disorder, his alleged back and knee disorders, his obesity, and additional mental health disorders should have been found to be additional severe impairments at this step in the inquiry, which would have led to a finding that he is disabled.

The Social Security regulations provide that "[f]or paragraph C, we will assess the degree of functional limitation the additional impairment(s) imposes to determine if it significantly limits your physical or mental ability to do basic work activities, *i.e.*, is a 'severe' impairment(s), as defined in §§ 404.1520(c) and 416.920(c)." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00(A). In order to be considered at Step 2, an impairment must be a medically determinable

impairment established by signs and clinical findings from an acceptable medical source. See 20 C.F.R. §§ 404.1513(a), 404.1520(a)(4)(ii), 416.913(a), 416.920(a)(4)(ii). An impairment may not be established on the basis of symptoms alone. See SSR 16-3p, 2016 WL 1119029, at *2 (Mar. 16, 2016). Additionally, a severe impairment must be severe for a continuous period of at least 12 months. See 20 C.F.R. §§ 404.1509, 1520(a)(4)(ii), 416.909, 416.920(a)(4)(ii). Finally, the claimant bears the burden of production and persuasion at Step 2. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

With regard to Plaintiff's seizure disorder, as the ALJ pointed out, the medical records indicate that Plaintiff had not experienced any seizures since January 2008, 2½ years before the relevant period began (and that he had denied having had seizures for close to 10 years). (R. 20). The ALJ also noted that Plaintiff's prescription for Depakote apparently controlled his seizures well, and that his records indicated his seizure disorder was "stable" and "controlled" throughout the relevant period. (R. 20). Substantial evidence therefore supports the ALJ's finding that Plaintiff's seizure disorder was not severe.

As for Plaintiff's alleged back and knee disorders, although Plaintiff testified to experiencing back and knee pain, no doctor diagnosed him with a back or knee disorder, no clinical findings supporting any such disorders exist in the record, and no diagnostic testing was done or recommended. (R. 19). Rather, the clinical findings regarding Plaintiff's back and knees were normal. (R. 19). Although Plaintiff complained of back or knee pain to his care providers on 3 occasions, the record indicates that he much more frequently denied experiencing any such pain. (R. 20). Although Plaintiff testified that he occasionally took narcotic pain medication, the treatment notes contain no record of a prescription for such medication. (R. 20). Finally, no medical or other source assessed any functional limitations regarding Plaintiff's back or knees. (R. 20). Therefore, substantial evidence supports the ALJ's finding that Plaintiff's alleged back and knee disorders were not severe impairments.

Regarding Plaintiff's obesity, the ALJ noted that no physician of record had tied Plaintiff's musculoskeletal complaints to his obesity. (R. 20). The ALJ also explained that Plaintiff testified to having pain, but his medical records more often showed Plaintiff denying pain to his care providers. (R. 20). The ALJ further noted that Plaintiff was not receiving any narcotic pain prescriptions, physical therapy or pain management therapy. (R. 20). He had not been referred to any specialist, nor had any medical source of record imposed any functional limitations due to his obesity. (R. 20). Thus, substantial evidence supports the ALJ's finding that Plaintiff's obesity was not a severe impairment.

Finally, although the ALJ noted that Plaintiff had testified that he might have been depressed, Plaintiff did not require any mental health treatment during the relevant period and he routinely denied depression to his treatment providers. (R. 24-25). Rather, upon review of the evidence, Plaintiff's treatment records show, among other things, that he had normal mood and affect with no evidence of depression or anxiety, was well-groomed, had good eye contact, normal attention, normal thought form and content, normal concentration, and intact judgment and insight. Substantial evidence therefore supports the ALJ's findings that did not include other mental disorders as additional impairments.

Accordingly, the Court concludes that the ALJ did not err in finding that Plaintiff did not have an additional severe impairment in accordance with Listing 12.05(C).

Second, Plaintiff argues that the ALJ erred in refusing to order consultative evaluations, thereby failing to develop the record. More specifically, Plaintiff states that the ALJ failed to comply with the Appeals Council's directive "to obtain additional evidence regarding plaintiff's impairments including obtaining consultative internal medicine and psychological examinations." (Doc. No. 12, at 15). In fact, after considering the ALJ's first decision from 2014, the Appeals Council issued a remand order finding that further consideration of Plaintiff's severe impairments at Steps 2 and 3 was warranted because the ALJ had made several findings in his 2014 decision that were internally inconsistent and did not appear to be supported by the medical evidence of record. The Appeals Council noted at the outset that, although the ALJ had found that Plaintiff's back and knee pain constituted severe impairments, "pain" is not an impairment. (R. 186). The Appeals Council also explained that, although the ALJ had found that Plaintiff's impairments did not meet the criteria of 12.05(C), the ALJ did find that, in addition to Plaintiff's learning disorder, Plaintiff's back and bilateral knee pain and his seizure disorder were severe impairments. The Appeals Council also remarked that the ALJ had not found that such impairments imposed significant work-related limitations of function, although he did impose certain restrictions in his RFC.

Notably, in its order remanding the case to the ALJ, the Appeals Council emphasized that it was declining to issue a decision finding that Plaintiff's impairments satisfy the requirements of 12.05(C) "because the medical evidence of record does not persuasively establish that the claimant's impairments of seizure disorder and back and bilateral knee disorders (pain) significantly limit the claimant's physical or mental ability to do basic work activities." (R. 186). The Appeals Council explained that the medical evidence did not indicate that Plaintiff's seizures would constitute a severe impairment as they appear to be well-controlled. The Appeals Council also stated that there are "no treatment records documenting persistent complaints of back and bilateral knee disorders (pain), nor is there any clinical or diagnostic evidence to establish the etiology for [his] reported back and knee disorders (pain)." (R. 187).

Thus, the Appeals Council directed the ALJ to obtain additional evidence concerning Plaintiff's learning disorder, seizure disorder, and back and bilateral knee disorders (pain) "in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence." (R. 187). The Appeals Council specified that such additional evidence "may include, if warranted and available, consultative internal medicine and psychological examinations." (R. 187). The Appeals Council also instructed the ALJ to further consider whether Plaintiff's "impairments of seizure disorder is a severe impairment and whether the complaints of back disorder (pain) and bilateral knee disorder (pain) are attributable to a medically determinable severe impairment." (R. 187).

Accordingly, upon remand, the ALJ held a new hearing and collected additional evidence, including recent medical treatment records. (R. 34-81, 617-60). Then, in accordance with the regulations, the ALJ determined that the record had been fully developed and that no

4

further examinations or tests were necessary. (R. 16). See 20 C.F.R. §§ 404.1512, 404.1520b(a), 416.912, 416.920b(a); Delaney v. Berryhill, No. 16-1784, 2018 WL 783685, at *2 n.4 (W.D. Pa. Feb. 8, 2018). As discussed, supra, the record contains numerous treatment records documenting repeated physical examinations conducted by Plaintiff's medical treatment providers, and those records indicate normal findings and no prescribed treatment for pain. As the decision to order a consultative examination is within the sound discretion of the ALJ, the Court finds that the ALJ did not err in finding that the record was sufficient to render a decision here without the need to order a consultative examination. See Thompson v. Halter, 45 Fed. Appx. 146, 149 (3d Cir. 2002).

Third, the Court finds no merit in Plaintiff's contention regarding the ALJ's decision not to give substantial weight to the opinion rendered by nurse practitioner Allen Jones, C.R.N.P., dated April 26, 2013, which found that Plaintiff was permanently disabled due to seizure disorder and hyperlipidemia. (R. 512-13). First of all, as the ALJ states, Mr. Jones—a nurse practitioner in the office of Plaintiff's treating physician—is not an "acceptable medical source within the meaning of the regulations (20 C.F.R. 404.1513 and 416.913)." (R. 26). Nevertheless, the ALJ notes that Mr. Jones's opinions are still relevant and must be considered, but the issue of whether an individual is "disabled" is reserved to the Commissioner. (R. 26). Moreover, it is well-established that "[t]he ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011) (citing 20 C.F.R. §§ 404.1527(e)(1), 404.1546(c)). "The law is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity." Brown v. Astrue, 649 F.3d 193, 197 n.2 (3d Cir. 2011). In fact, a treating physician's opinion is only entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir. 2001) (quoting 20 C.F.R. § 404.1527(c)(2)). "If, however, the treating physician's opinion conflicts with other medical evidence, then the ALJ is free to give that opinion less than controlling weight or even reject it, so long as the ALJ clearly explains [his or] her reasons and makes a clear record." Salles v. Comm'r of Soc. Sec., 229 Fed. Appx. 140, 148 (3d Cir. 2007). Thus, an ALJ is not required to accept a treating physician's opinion since the determination of whether an individual is disabled "is an ultimate issue reserved to the Commissioner." Smith v. Comm'r of Social Sec., 178 Fed. Appx. 106, 112 (3d Cir. 2006).

The Court finds that the ALJ did not, as Plaintiff alleges, improperly reject the opinion of Mr. Jones in formulating Plaintiff's RFC, but rather, the ALJ fulfilled his duty as fact-finder to evaluate Mr. Jones's opinion, considering a number of factors, and in light of all the evidence presented in the record. See 20 C.F.R. §§ 404.1527, 416.927. In fact, the ALJ thoroughly reviewed Plaintiff's medical records, including those related to his treatment at the physician's office where Mr. Jones worked, and declined to give Mr. Jones's opinion significant weight for several reasons. (R. 26). The ALJ found Mr. Jones's opinion to be unsupported by the preponderance of the evidence. (R. 26). As the ALJ explained in his decision, Plaintiff had not experienced any seizures during the relevant period. (R. 20). Moreover, the ALJ found that Plaintiff's hyperlipidemia had not "required any significant medical treatment or resulted in any continuous, exertional or non-exertional functional limitations." (R. 19-20, citing 20 C.F.R.

§§ 404.1509, 404.1521, 416.909, 416.921; SSR 85-28, 1985 WL 56856 (1985)). Also, the ALJ emphasized that "no other acceptable medical source opinion of record, not even Dr. Mercurio, has concluded the claimant is [disabled] or indicated the claimant is unable to meet the basic mental demands of competitive work on a sustained basis for the period at issue." (R. 26).

Moreover, the Court notes that the opinion of Mr. Jones was provided on a simple Employability Assessment Form from the Pennsylvania Department of Welfare, which consisted mainly of questions with options to check. (R. 512-13). The form provided no space for referencing specific medical or clinical findings to support the assessments. The Court of Appeals for the Third Circuit has stated that "[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best." Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993).

Thus, the Court finds that the ALJ did not err in declining to give Mr. Jones's opinion substantial weight in his analysis.

Fourth, Plaintiff contends that the ALJ failed to consider properly his subjective complaints of pain and thus erred in formulating his RFC which did not include pain-related limitations (Plaintiff's arguments IV and VI are combined here because they are interrelated). In determining whether a claimant is disabled, the ALJ must consider all of a claimant's symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. See 20 C.F.R. §§ 404.1529(a), 416.929(a). A claimant's subjective complaints of symptoms alone are not sufficient to establish disability. See id. In evaluating a claimant's subjective complaints, the ALJ must consider, first, whether the claimant has a medically determinable impairment that could reasonably be expected to produce the symptoms he alleges. See 20 C.F.R. §§ 404.1529(b), 416.929(b). Once an impairment is found, the ALJ then must evaluate the intensity and persistence of the claimant's symptoms to determine the extent to which those symptoms limit his ability to work. See 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii) (factors relevant to symptoms can include daily activities, medications and medical treatment). In the ALJ's decision here, after examining Plaintiff's medical records and subjective complaints in connection with his alleged impairments, the ALJ simply found that such evidence did not fully support the full extent of the limitations he alleges.

Specifically, the ALJ found that Plaintiff's intellectual impairment could reasonably cause his alleged symptoms. (R. 25). However, the ALJ further found that Plaintiff's subjective complaints regarding his limitations "are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (R. 25). In reaching his conclusion regarding Plaintiff's intellectual impairment, the ALJ relied upon Plaintiff's daily activities, the clinical findings in the record, and the state agency psychologist's opinion. With regard to Plaintiff's allegations of back and neck pain, however, the ALJ emphasized that—as the Appeals Council had stated—pain is not an impairment, and that "the preponderance of evidence fails to establish the existence of any medically determinable back or knee impairments." (R. 25). Moreover, as discussed, supra, the ALJ discussed Plaintiff's testimony regarding back and knee pain but found that it was simply not supported by the evidence of record, including physical examination findings for the relevant period that were essentially

6

within normal limits, the lack of imaging studies of record documenting any degenerative, arthritic, or other musculoskeletal impairments, and the fact that no physician of record has diagnosed Plaintiff with any musculoskeletal impairment. (R. 19, 25). Therefore, the Court finds that the ALJ reasonably concluded that Plaintiffs' subjective complaints of pain were inconsistent with the evidence of record, and that the ALJ did not err in formulating Plaintiff's RFC without pain-related functional limitations.

Lastly, Plaintiff contends that the ALJ improperly disregarded the testimony of the VE and relied on an incomplete hypothetical question. In fact, in his decision, the ALJ relied on the answer provided by the VE to the ALJ's hypothetical question based on the RFC that was ultimately found in this case. The ALJ did not, however, also consider the VE's responses to additional questions about limitations that were not, in the end, included in the RFC. Specifically, the ALJ asked the VE—assuming an individual of Plaintiff's age, education and work experience who can perform work at any exertional level, but who is limited non-exertionally to jobs involving: no occupational hazards, unprotected heights, dangerous machinery, ropes, ladders and scaffolds; no more than simple, routine, repetitive tasks that would be performed in a low stress work environment (defined as no high volume productivity requirements and very infrequent unexpected changes); and no more than occasional interaction with the public, coworkers, and supervisors—whether jobs exist in the national economy that such an individual can perform. (R. 23-24, 77). Considering these limitations, the VE testified that such an individual would be able to perform the requirements of representative occupations such as housecleaner, general laborer, laundry aide, hand packager, and dining room attendant/busser. (R. 28, 77-78). Plaintiff argues that the ALJ should also have considered the VE's responses to follow-up questions, including whether there would be work for a person who would need repeated retraining or who is going to need to have somebody available at all times to answer questions or to provide redirection, or who would be off-task more than 10% of the workday, or who would have a marked impairment in their ability to make judgements on simple work-related decisions. (R. 78-79). Plaintiff asserts, without citing to any evidence, that his intellectual disability limits him in all of these ways, and that the ALJ's consideration of the testimony of the VE regarding these additional limitations would have led to a finding that he is disabled.

It is important to note that, while the hypothetical question to the VE must accurately portray the claimant's impairments, such question need only reflect those impairments that are adequately supported by the record. See Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984); Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987); see also 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) (explaining that your RFC "is the most you can still do despite your limitations"). Plaintiff correctly points out that inclusion of the above-referenced limitations would have, according to the VE's testimony, indicated that such an individual could not maintain employment. (R. 78-79). However, while follow-up questions were posed regarding whether such additional limitations would limit an individual's ability to perform work, when the ALJ ultimately formulated Plaintiff's RFC, he did not find that these additional restrictions needed to be included therein. The ALJ therefore did not need to consider the responses from the VE to such additional hypothetical questions.

7

Therefore, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (Doc. No. 11) is DENIED and Defendant's Motion for Summary Judgment (Doc. No. 13) is GRANTED.

s/ Alan N. Bloch<br>United States District Judge

ecf:          Counsel of record

---

The Court emphasizes that the ALJ clearly explained the reasoning underlying Plaintiff's RFC, which formed the basis for the ALJ's hypothetical question regarding the ability of an individual such as Plaintiff to perform jobs in the national economy. Additionally, the ALJ included in his analysis a thorough discussion of the record in this case. Quite simply, Plaintiff never established that he would require the additional restrictions that were included in the follow-up hypothetical questions to the VE. Thus, the Court finds that, in his decision, the ALJ relied upon the response to an appropriate hypothetical question which included those limitations, properly portrayed in the RFC, that were supported by the record.

As to any additional arguments mentioned summarily by Plaintiff in his brief, the Court finds that he has failed to establish how the ALJ's failure to consider properly any additional evidence of record constitutes reversible error.

In sum, the Court finds that the ALJ properly evaluated the medical opinion evidence of record in formulating the RFC in this case, and that the ALJ did not err in finding that Plaintiff's impairments did not meet the requirements of Listing 12.05(C). The Court also finds that the ALJ did not err in declining to order consultative examinations, nor did he err in failing to give substantial weight to the opinion of Plaintiff's health care provider. Further, the Court finds that the ALJ did not err in evaluating Plaintiff's subjective complaints of pain, or in formulating his RFC. Finally, the Court finds that the ALJ's hypothetical question to the VE fully accommodated the limitations that were supported by the record, which were also properly included in the RFC, and that the ALJ did not err in relying on the response of the VE to his hypothetical question. Accordingly, the Court affirms.